Mrs. Herbert J. ROY, Appellant,

v.

Charles Edward SHERMAN, Jr., Appellee.

No. 15206.

Court of Civil Appeals of Texas.

Dallas.

Jan. 4, 1957.

Rehearing Denied March 15, 1957.

Stanford & Allen, Vactor H. Stanford, Dallas, for appellant.

E. D. Hurt and Earl R. Parker, Dallas, for appellee.

DIXON, Chief Justice.

This is a child custody case.

In the year 1954 appellant, then Mrs. Viola Sherman, sued her husband, appellee Charles Edward Sherman, Jr., for divorce. Appellee filed an answer and cross-action. On January 7, 1955 a divorce was granted to appellee on his cross-action. Prior to the trial appellant had withdrawn her contest of her husband's cross-action. The two minor children of the parties, a boy and a girl, aged seven and three years respectively, were placed in the care and custody of the Superintendent of the Home for Children of the Independent Order of Odd Fellows at Corsicana, Texas.

Both parties thereafter remarried. On September 6, 1955 appellant, who had become Mrs. Herbert J. Roy, brought this suit against Paul Davenport, Superintendent of the Odd Fellows Home and against her former husband, appellee Charles Edward Sherman, seeking to obtain care and custody of the two children. Paul Davenport, Superintendent, answered by letter to the court, stating that the Odd Fellows Home for Children would not contest the suit and would abide by the ruling of the court. Appellee Charles Edward Sherman, Jr., filed an answer and cross-action asking that care and custody of the two children be awarded to him. On March 27, 1956 the court rendered judgment awarding care and custody of the children to their father, appellee Charles Edward Sherman, Jr.

No separate findings of fact were made by the trial court, but the written judgment signed by the court contained these findings: " * * * the Court * * * finds that plaintiff, Mrs. Herbert J. Roy is a suitable person for the care and custody of said minor children; that the natural father, Charles Edward Sherman, Jr., is a fit and suitable person for the care and custody of said children, and can properly care for said children; that the best interests of said children will be best served by awarding them to the care, custody and control

of their natural father, Charles Edward Sherman, Jr. * * *."

Appellant has briefed five points on appeal. Four of them assert that the court erred and abused its discretion in awarding the children to appellee Charles Edward Sherman, Jr., because (1) having made a finding that the mother was a suitable person to have custody of the children, who are of tender age, the court as a matter of law should have awarded their care and custody to the mother; (2) the evidence showed a material change in the mother's circumstances rendering it to the best interest of the children to be awarded to her; (3) there was not sufficient evidence to support a determination that there had been a material change in the father's circumstances which would render it to the best interest of the children to be awarded to him; (5) appellee did not plead or prove changed conditions making it to the best interest of the children to be awarded to him. In another point—point No. 4—appellant says that appellee is now a resident of the State of Louisiana, and asserts that there is not any evidence of impelling facts and circumstances to warrant an award of the children to a non-resident of this State.

It will be observed that appellant's points Nos. 1, 2, 3 and 5 charge an abuse of discretion on the part of the trial court in awarding the children to their father. We shall therefore discuss them together. The nature of these points requires us to examine carefully all the evidence disclosed by the record, but we shall set out in narrative, condensed form, only so much of the evidence as may reflect the factual situation which confronted the trial judge.

Appellant Mrs. Herbert J. Roy testified that at the time of the divorce she was not employed and did not have a home for the children. She and her husband visited a psychiatrist, who suggested that the children should be placed in the home of mutual friends. For that reason she and her husband agreed that the children should be placed in the Odd Fellows Home at Corsi-

cana. At the time she was being treated by the doctor for her nerves, which had got to the very worst extreme. At the time of this trial she was still nervous to a certain extent, but not quite as bad as she was at the time of the divorce. She had discontinued the treatments from the doctor for the reason that at the time of this hearing she was four and one-half months pregnant, and had to cease taking the tablets the doctor was giving her. She has been visiting the children every month at the Home in Corsicana. Her present husband has an adequate income to provide a good home and he too wants to have the children in their home. Her present husband did not testify.

Mrs. Dale Landrum, a neighbor, testified that she had known appellant for about eight months. She had visited in the home of the Roys. It is in a nice neighborhood and a nice two-bedroom home. In her opinion appellant would make a good mother. She had never met the children.

Charles Edward Sherman, Jr., testified that he is a Captain in the United States Army. His home is in Dallas but at the present time he is stationed at Camp Polk, Louisiana. At the time he and appellant were divorced in 1955 he was stationed at Fort Hood near Killeen, Texas. He has been in the military service off and on for eighteen years. He says that there was no agreement between appellant and himself to place the children in the Odd Fellows Home. They were placed there, he says, at his request, because at the time of the divorce and for some time following the divorce he had no home for them. The psychiatrist who was consulted by appellant and himself advised them that appellant was immature and would not accept the responsibility for raising her children, and that she should not have the children, or even visit them. Appellant had refused to take care of the children. At the time of the divorce appellant's attorney was unable to locate appellant to find out whether she would consent to place the children in the Odd Fellows Home, so they were placed

in the Home by stipulation of Counsel. Since the divorce appellee has remarried. At the time he had every intention of getting the children out of the Odd Fellows Home as soon as he was situated where he could provide a home for them. He went to Washington on his honeymoon to find out what his status was, and upon his return to Dallas, talked to his attorney about getting the children out of the Odd Fellows Home. As soon as he located suitable quarters in Killeen, Texas, near Fort Hood, he again contacted his attorney and was informed that Mrs. Roy had filed suit for the children. Meantime he had the children with him in his home last Christmas. Sometime later he was transferred to Camp Polk, Louisiana, where he now resides.

Mrs. Viola Sherman, present wife of appellee, thirty years old, also testified. She and her husband have visited the children at Corsicana a number of times. When the children visited them last Christmas she got along beautifully with the children. She can make them a good home and mother, and wants them to be with her and their father.

An investigator's report and a supplemental report were filed by the Juvenile Department of Dallas County including a report from the Department of Public Welfare at Leesville, Louisiana, near Camp Polk. These reports at considerable length went into the background and present situation of both appellant and appellee. Appellee, the father, at all times before and since the divorce has evinced a very great interest and concern for the children. Though no formal recommendation is made as to where custody of the children should be placed, the reports are unquestionably more favorable to appellee than to appellant. The investigator among other things stated: "It is our evaluation that the children would have a very adequate home with Captain and Mrs. Sherman."

■■ Appellant relies on the well established general rule that children of ten- der years should ordinarily be awarded to their mother where she is found to be a suitable person to have their care and custody. Appellee on the other hand says that the paramount and dominant rule, also well established, is that the best interests of the children must be the first consideration to govern the court's decision as to custody. Both parties agree that in deciding wherein the best interest of the children lies, the trial court is allowed a broad discretion, which will not be disturbed on appeal unless a clear abuse of discretion is shown.

We believe that appellee's position is correct and is well supported in the decided cases. In re Belcher, Tex., 289 S.W.2d 915; Bronner v. Bronner, Tex.Civ.App., 278 S.W.2d 530; Taylor v. Meek, 154 Tex. 305, 276 S.W.2d 787; Watts v. Hatchel, Tex.Civ.App., 249 S.W.2d 69; McAnally v. McAnally, Tex.Civ.App., 239 S.W.2d 154; Mayes v. Timmons, Tex.Civ.App., 183 S.W.2d 989.

■■ In the instant case it is to be observed that though the trial court found appellant to be a suitable person to have care and custody of the children, the court's findings go much further as to appellee. As to appellee the court found not only that he was a suitable person to have the care and custody of the children, but that he was a fit person for their care and custody, that he could properly care for them, and that "the best interests of the children will be best served by awarding them to the care, custody and control of their natural father, Charles Edward Sherman, Jr. * * *." Under the facts as shown in the record before us we agree with appellee that the trial court did not abuse its discretion by awarding the children to appellee. Appellant's points Nos. 1, 2, 3 and 5 are overruled.

■ Appellant's point No. 4 challenges the court's judgment awarding the children to appellee because appellee at the present time resides outside the State of Texas. Though courts are ordinarily reluctant to make such an award, they have power to do

so. And when they do make such an award, their judgment will not be reversed on appeal except upon a showing of an abuse of discretion. Patterson v. Wilson, Tex.Civ.App., 177 S.W.2d 1004; Dickson v. McLaughlin, Tex.Civ.App., 69 S.W.2d 209. In the instant case we cannot say that there has been an abuse of discretion. Appellant's point No. 4 is overruled.

The judgment of the trial court is affirmed.

### On Rehearing

 Appellant complains because in our original opinion we referred to alleged hearsay statement made by a psychiatrist, which statement, says appellant, being only hearsay, has no probative force. We agree that mere hearsay has no probative force as evidence. But we do not agree that the circumstances under which the testimony was presented here made the statement hearsay. Regardless of whether the statement of the psychiatrist was true or false, a fact question was presented as to what the psychiatrist said.

It was appellant herself who on her direct examination first introduced testimony as to what the phychiatrist said and its effect on her. We quote from her testimony, first on direct examination and then on cross-examination:

"Q. Where are those children now? A. At the Odd Fellows Home in Corsicana, Texas.

"Q. Have they been there since the divorce was granted? A. Yes.

"Q. Was that by agreement between you and Captain Sherman at that time? A. Yes, it was.

"Q. State what your circumstances were at the time the divorce was granted, with respect to your physical condition, your living conditions, and anything that might have a bearing on your ability to take care of the children? A. Well, at the time the divorce was granted I was not employed at the time, and also I did not have a home to take the children to. I was living with my mother, and Captain Sherman and *I visited the phychiatrist and it was on his suggestion that the children should be placed in a home of mutual friends until either of our lives could be settled.*

"Q. The psychiatrist suggested that? A. That is right.

"Q. Is that the reason you all agreed for the children to go down to Corsicana? A. That is right. * * *

"Q. Did you make a contest for the children at that time? A. I did not.

"Q. Why didn't you? A. Because it had already been agreed upon that they would be placed in the Odd Fellows Home.

"Q. When and with whom was the agreement made? A. *With the psychiatrist, and also with my lawyer.*" (Emphasis ours.)

From the above testimony it will be seen that Mrs. Roy says in substance that she consented for the children to be placed in a Home because a psychiatrist suggested it. We think appellee was entitled to testify in rebuttal to her statement. He did so. Here is his version of the facts and circumstances in connection with the placement of the children in the Odd Fellows Home rather than in the custody of either parent:

"Mr. Hurt: *Did you have any agreement with her as to putting the kids in the Home down there? A. I did not.*

"Q. Tell the court how that happened? A. If the court will bear with me, that goes back to the psychiatrist, which actually was prior to the date of the divorce.

"Q. She spoke about it. Proceed with what the psychiatrist said. A. Will the Court allow the reasons why

she went to the psychiatrist? The Court: Don't go behind that. * * *

"Q. Mr. Hurt: *You did go to a psychiatrist with her? A. Yes.*

"Q. *And you consulted a psychiatrist with her? A. I did.*

"Q. *Did the psychiatrist say at that time she should not have the children because of the situation that both of you had at that time, no place to take them? A. He did not. He made a different statement.*

"Q. *What was his statement? A. His statement was that Mrs. Roy was immature and would not accept the responsibility for raising her children; that she should not have the children, nor visit them.* * * * At that time Mrs. Roy was very vehement about not having the children placed in an institution. * * *

"Q. Mr. Hurt: *There was no agreement then as to your putting them in a Home? That was your own idea? A. That is correct.* * * * A. At the time of the divorce, which was January 7, 1955, we appeared in Judge McCraw's court for an uncontested divorce. At that time I requested the Court to place the children in the custody of the Home—the Odd Fellows Home at Corsicana. * * * *This was after the date with the psychiatrist, when my wife had refused to take care of them.* * * * *At the time of the divorce hearing, the present attorney for the plaintiff could not contact the plaintiff to find out if she agreed to putting the children in the Home or not. By stipulation between counsel, it was agreed to put the children in the Home.*" (Emphasis ours.)

From the record as quoted above we think a fact issue arose as to whether, as appellant claims, the children were placed in the Odd Fellows Home by consent of both parents because the psychiatrist suggested it, or whether, as appellee claims, the children were placed in the Home by stipulation of counsel, but upon his request alone, after a vain effort to locate appellant to obtain her consent. What the psychiatrist actually said and its effect (not the truth of what he said), thus became a fact issue. And the testimony doubtless had some bearing on the question, always important, of the credibility of the witnesses.

However, if we are in error in the above conclusion, we nevertheless are still of the opinion that the judgment must be affirmed. If we exclude consideration of the psychiatrist's statement, there is sufficient competent evidence remaining to support the trial court's judgment. For example, we quote again from appellant's testimony:

"A. I was very much upset and was receiving treatment from the doctor for my nerves, which had gotten to the very worst extreme.

"Q. With respect to your present physical condition, what is your present physical condition, as far as you know from the way you feel? A. Well * * *

"Q. Do you still have that trouble with your nerves? A. I am still nervous to a certain extent; not quite as bad as I was.

"Q. Are you still receiving treatment from the doctor for that? A. Not at this time * * *.

"Q. What has the psychiatrist said recently about your nerves? A. I have not been to a psychiatrist recently. The psychiatrist never said anything about my nerves. It was my own physician."

The trial court saw and heard the parties. It was the court's duty to place the children where, in his opinion based on the evidence, their interest, not the interest of either parent, would be best served. We are bound by the court's decision if it finds

support in the evidence. We believe it does in this case.

Appellant also complains because we referred to the investigator's report. As we pointed out, the report withheld any recommendation as to custody. We did not base our decision on the investigator's report, and there is nothing to indicate that the trial court did so. In our opinion there was ample competent evidence before the trial court, exclusive of the investigator's report and the psychiatrist's statement, to support the court's judgment.

The motion for rehearing is overruled.